UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GPS INDUSTRIES, LLC,

    Plaintiff,

v.                                                   Case No. 8:09-cv-2507-T-17MAP

BRIAN K. LEWIS,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff GPS Industries, LLC ("GPSI"), the so-called "leading entity in the golf cart mounted GPS systems industry on a global level," alleges breach of agreement against Defendant Brian K. Lewis ("Lewis"). GPSI contends Lewis violated restrictive covenants found in his employment agreement, including non-disclosure, non-competition and non-solicitation provisions. Amongst other relief, GPSI seeks a preliminary injunction enjoining Lewis from disclosing confidential information and trade secrets, from competing against GPSI and from unfairly soliciting GPSI's clients and employees (doc. 3). Lewis opposes the request (doc. 11). After consideration, I recommend Plaintiff's motion for preliminary injunction be denied.

    *A. Factual Background*

Lewis began working for ProLink Inc. in 2001 as an Installation Lead. During the course of his eight years of employment, the company engaged in various mergers, acquisitions and/or name changes. Lewis's employer became Prolink/Parkview LLC then Prolink Solutions LLC and finally Prolink Systems Inc. (collectively, referred to as "Prolink") (doc. 17). His employment with Prolink

terminated on October 14, 2009, as a result of Prolink selling all of its assets to GPSI (*id.*, Exh. 2).[1] At the time of his termination, Lewis served as the Customer Support Manager for Prolink though he had served in several other capacities during his tenure with Prolink.

On the date of his termination, Lewis received an e-mail from the Human Resources Manager for Prolink with attached documents for Lewis to sign to begin his employment with GPSI (*id.*, Exh. 1). Lewis signed a letter regarding an offer of at-will employment and signed an arbitration agreement (*id.*, Exhs. 3, 6). The October 14, 2009, letter regarding the offer of at-will employment did not spell out Lewis's compensation but rather stated he would receive an annual base salary or an hourly rate to be mutually agreed upon by the parties (*id.*, Exh. 3). Although vague as to the terms of Lewis's employment, the letter directed that upon execution and delivery to the president of GPSI the letter would serve as an agreement of Lewis and GPSI to enter into an at-will employment relationship and would constitute a statement of the parties' present intent with respect to the at-will employment relationship subject to the conditions in the letter and to the parties entering into the standard company documents. The letter also indicated Lewis understood and agreed the offer of employment from GPSI constituted an offer of new employment not a continuation of employment. Lewis signed the letter on October 15, 2009, agreeing that the letter indicated the parties' respective intentions.[2]

The next day, Lewis received another e-mail from the Human Resources Manager informing

---

[1] At the hearing, counsel for the parties identified some inconsistencies regarding the facts leading up to the formation of GPSI. As a result, some of the background facts in this case remain unclear.

[2] The President of GPSI signed the letter using an electronic signature with the designation "/s/ Ben Porter" rather than a handwritten signature.

Lewis the attached employment forms were required to be in his personnel file on the following Monday (*id.*, Exh. 4).³ The attached documents included the Form GPSI Staff Confidentiality Agreement, Employee Application, and Form GPSI Arbitration Agreement. Lewis signed the Intellectual Property, Non-Compete and Nondisclosure Agreement for Employees" ("the Agreement") that day (doc. 2, Exh. A).⁴ The Agreement contains the following restrictive covenants:

> 2. **Nondisclosure of Information.** The Employee shall not during employment and for a period of 5 years after termination of employment, directly or indirectly, reveal, report, publish or disclose any trade secret information, or allow any such trade secret information to be disclosed, to any person or entity, for any reason or purpose whatsoever, without the express written consent of the Company. In addition, the Employee will not accept any employment or other business relationship which would, by the nature of the position, inherently involve the use or inevitable disclosure of the Information. Employee further acknowledges that he understands that some of the property and information referred to herein may have been obtained by Company from others with restrictions on disclosure, and that unauthorized disclosure or use of such property of others may result in punitive action by such other party as well as by Company.
>
> 7. **Non-Competition.** Upon the termination of Employee's employment relationship with Company and for a period of 12 months thereafter, irrespective of the time, manner, or method of such termination, the Employee shall not, without the express written consent of the Company, directly or indirectly, consult with, render services to, or otherwise participate or attempt to participate in any manner in a business or entity which competes with the Company, as such activities would necessarily harm the protectible business interests of the Company. Given the global nature of Company's business, there is no geographic limitation [to] the non-competition provision, and such provision shall be presumed effective world-wide. The restrictions in this provision are necessary to allow the Company sufficient time to protect its legitimate interest in a business relationship established or being established with companies, clients, customers, and applicants by affording

---

³ The e-mail indicates it was sent on Friday, October 16, 2009, at 2:31 p.m.

⁴ The Agreement conflicts with the arbitration agreement signed by Lewis. The Agreement explicitly states "[t]his agreement is not subject to any arbitration provisions" and that "ALL DISPUTES BE RESOLVED BY A JUDGE APPLYING SUCH APPLICABLE LAWS" (doc. 2, Exh. A). Further, the Agreement indicates it constitutes the entire agreement between the parties. GPSI did not address this discrepancy in its motion or at the hearing.

reasonable time for the Company to develop its personal and business relations between the Company and its existing potential companies, clients, customers and applicants.

8. **Non-Solicitation.** Upon the termination of Employee's employment relationship with the Company and for a period of 24 months thereafter, Employee shall not without the prior written consent of the Company directly or indirectly: (a) solicit any employee, contractor, subcontractor, or agent of the Company to leave the service of Company; or (b) solicit and/or accept business from any existing or potential customers or clients (including applicants) with whom Employee had become familiar as a result of his employment with the Company.

(*Id.*).[5]

Subsequently, on October 30, 2009, Lewis received another letter regarding an offer of at-will employment via e-mail (doc. 17, Exh. 8). The October 30, 2009, letter mirrored the language of the October 14, 2009, letter except that the October 30, 2009, letter provided Lewis would be paid an annual base salary of $51,500. Although Lewis did not sign the October 30, 2009, letter, he received earnings statements for the periods ending October 23, November 6, and November 20, 2009, reflecting compensation received from his employment with GPSI during those periods (doc. 27). After working for GPSI for approximately one month, Lewis resigned from his position on November 16, 2009, with his last day of work commencing on November 18, 2009 (doc. 2, Exh. B).

*B. Standard of Review*

The decision to grant or deny a preliminary injunction is within the discretion of the district

---

[5] Florida law dictates that courts "shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought." Fla. Stat. § 542.335(1)(a). GPSI's President, Benjamin Porter ("Porter"), did not sign the copy of the Agreement entered into the record (doc. 2, Exh. A or doc. 17, Exh. 5). At the hearing, counsel for GPSI assured the Court that GPSI would locate a copy of the Agreement signed by both parties and put it on the record. Irrespective, as the person against whom enforcement is sought, the restrictive covenants contained in the agreement, if valid, would be enforceable against Lewis as a result of his signature. *See* Fla. Stat. § 542.335(1)(a).

court. *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). In determining whether a preliminary injunction should issue, the district court considers whether the moving party has demonstrated (1) a substantial likelihood of success on the merits; (2) irreparable harm to the moving party unless the injunction issues; (3) the threatened injury to the movant outweighs the potential harm the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not disserve or be adverse to the public interest. *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1240 (11th Cir. 2005). Since a preliminary injunction is an extraordinary and drastic remedy, a district court should not issue a preliminary injunction unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003).

C. Discussion

1. Likelihood of success on the merits

The first factor in determining whether a preliminary injunction should issue is whether GPSI can show a substantial likelihood it will prevail on the merits of its claim. In this instance, GPSI sets forth a single claim for breach of agreement and seeks to enforce the three restrictive covenants found in the agreement against Lewis; namely, the non-disclosure, non-competition and non-solicitation provisions. Based on the record before the Court, GPSI has failed to demonstrate a substantial likelihood of success on the merits because it has failed to show the restrictive covenants are enforceable due to the lack of "legitimate business interests" which would warrant protection and due to the unreasonably broad geographic application of the restrictive covenants.[6] Moreover, even

---

[6] The restrictive covenants are reasonable as to time and line of business, notwithstanding the "Non-Disclosure of Information" provision's five-year application. Where a restrictive covenant is predicated upon the protection of trade secrets, as the non-disclosure of

if GPSI could show the restrictive covenants are valid and enforceable, GPSI has failed to show Lewis breached the Agreement by violating any of the restrictive covenants.

Section 542.335(1), Florida Statutes, permits the enforcement of contracts restricting or prohibiting competition during or after the term of the restrictive covenant so long as such contracts are reasonable in time, area, and line of business. A party seeking to enforce a restrictive covenant must plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant and that the restriction is reasonably necessary to protect those legitimate business interests. Fla. Stat. § 542.335(1)(b) and (c). Legitimate business interests include trade secrets, as defined in Fla. Stat. § 688.002(4); valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers or clients; customer or client goodwill associated with a specific geographic location or specific marketing or trade area; and extraordinary or specialized training. Fla. Stat. § 542.335(1)(b). If the party seeking enforcement of the restrictive covenant establishes its *prima facie* case, the party opposing enforcement then has the burden of establishing the contractually specified restraint is overbroad, overlong or otherwise not reasonably necessary to protect the established legitimate business interests. Fla. Stat. § 542.335(1)(c). If the restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate interests, a court should modify the restraint and grant only the relief reasonably necessary to protect such interest or

---

information provision is, Florida finds a restraint for a duration of five years or less presumptively reasonable. Fla. Stat. § 542.335(1)(e). As explained more fully below, however, based on my finding that GPSI failed to show it has a legitimate business interest in any trade secrets, the "Nondisclosure of Information" provision is unenforceable and the issue as to its temporal application is moot.

interests.[7] *Id.* Florida law requires courts to construe restrictive covenants in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement and prevents courts from employing any rule of contract construction requiring the court to construe a restrictive covenant narrowly, against the restraint or against the drafter where legitimate business interests have been established. Fla. Stat. § 542.335(1)(h). If valid, a restrictive covenant may be enforced by, but not limited to, temporary or permanent injunctive relief. Fla. Stat. § 542.335(1)(j). A restrictive covenant not supported by any legitimate business interest, however, is unlawful and is void and unenforceable. Fla. Stat. § 542.335(1)(b).

In Florida, a court must only construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests when the person seeking enforcement establishes such legitimate business interests. *See* Fla. Stat. § 542.335(1)(h). GPSI contends its "legitimate business

---

[7] The Agreement includes a similar requirement in its "Intent of the Parties" provision, which states:

> 14. **Intent of Parties.** It is the intent of the parties that the Company be given the broadest protection allowed by law with regard to the scope of the restrictive covenants and agreements herein contained. The restrictive covenants and agreements of the Employee shall be construed as agreements independent of any other provision of Employee's employment. The existence of any claim or cause of action of the Employee against the Company shall not constitute a defense to the enforcement by the Company of any restrictive covenant contained herein. It is expressly agreed that if any portion of the restrictive covenants and agreements set forth in this Agreement are held to be invalid, unreasonable, overly broad, arbitrary, against public policy, or otherwise unenforceable, then each such covenant and agreement shall be considered divisible both as to time, geographical area, and any other relevant feature, with each month of a specified period being deemed a separate period of time, it being the intention of the parties that a lesser period of time, geographical area, or other relevant feature shall be enforced to the fullest extent permitted by law or as broadly as may [be] interpreted as "reasonable" by a court of law.

(Doc. 2, Exh. A, ¶ 14).

interests" include the substantial relationships with its existing and prospective customers. Admittedly, Florida law finds *substantial* relationships with *specific* prospective or existing customers or clients constitute a legitimate business interest. Fla. Stat. § 542.335(1)(b) (emphasis added). GPSI has failed, however, to show that it had a substantial relationship with any existing or prospective customers. The only reference to any clients appears in the affidavit of GPSI's president, Benjamin Porter ("Porter"), wherein he states Lewis and "his team" have contacted several of GPSI's "clients, including but not limited to courses at Red Tail and Cherokee Hills" (doc. 28, ¶ 6). Nothing appears in the record regarding a substantial or even a remote relationship with these or any other existing or prospective clients. GPSI refers to a company, FOC Financial ("FOC"), as a *former client*, but does not indicate that FOC was an existing client at the time of Lewis's termination or that Lewis solicited FOC into becoming a former client of GPSI after his termination (doc. 3). Accordingly, on this record, the Court should not find that any alleged substantial relationships with existing or prospective clients constitute a legitimate business interest. Indeed, emphasizing GPSI's repeated statements regarding the global nature of its business and its position as the industry leader in the golf cart mounted GPS systems industry, to hold otherwise would allow GPSI to argue every golf course in the world remains off limits to Lewis as either an existing or prospective client.

Likewise, GPSI's contention that it has "legitimate business interests" in its confidential information and trade secrets Lewis obtained while employed by GPSI, including but not limited to its pricing information, customer lists, business plans and proprietary technical data, similarly fails

on this record.[8]  In Florida, a trade secret consists of information that (1) derives independent economic value from not being generally known to and not readily ascertainable by others who can obtain economic value from its disclosure or use and (2) is the subject of reasonable efforts to maintain its secrecy.  *See* Fla. Stat. § 688.002(4).  In an action involving alleged trade secrets, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy.  *American Red Cross v. Palm Beach Blood Bank*, 143 F.3d 1407, 1410 (11th Cir. 1998) (applying Florida law).  Information generally known or readily accessible to third parties cannot qualify for trade secret protection.  *Id.*  GPSI seeks to impermissibly restrict Lewis by requesting enforcement of provisions which protect

---

[8] The agreement includes a provision relating to trade secrets, which states:

1. **Trade Secrets**.  Pursuant to such employment, the Employee will have access to and become familiar with confidential and/or trade secret information concerning the business and affairs of the Company, including without limitation, information concerning Company's customer base; pricing information and methods; training and operational procedures; advertising, marketing, and sales information; financial information; and other data, concepts, strategies, methods, procedures, and trade secrets as defined in Florida Statutes Section 688.002, used by the Company in carrying out its business (collectively, the "Information").  The parties acknowledge and agree that the unauthorized disclosure of such Information by the Employee during or after his or her employment with the Company would cause irreparable injury to the Company.  The parties further agree that Employee has received or will receive extraordinary or specialized training by the Company regarding the business operations of the Company and that the use of such training by the Employee during or after employment with the Company to compete with the Company will cause irreparable injury to the Company.  Employee further acknowledges that all trade, engineering, production, and technical data, information, or know-how, including but not limited to customer lists, plans, specifications, drawings, sketches, flowcharts, program listings, algorithms, and formulas, whether or not reduced to writing, used by the Company in the conduct of its business, or in research conducted by it, are the exclusive, secret and confidential property of the Company and shall be at all times regarded, treated and protected as secret and confidential information.

(Doc. 2, Exh. A, ¶ 1).

information generally known and readily accessible to third parties. Specifically, GPSI wants to restrict the use of its proprietary technical data. The documentary evidence indicates FOC obtained "copies of all source files, graphic files, and operating files related to and used by the FOC financed Courses" and obtained the right to use that information in the event of a default by Prolink as part of a financing arrangement between FOC and Prolink prior to the formation of GPSI (doc. 18, Exh. C). Though issues of fact remain as to who may use this technical data and whether it is the same data GPSI seeks to protect, third party FOC has general knowledge and ready access to the proprietary technical information obtained by GPSI from Prolink. GPSI did not indicate whether it received any other proprietary technical information during its acquisition of Prolink or whether it has taken any measures to maintain the secrecy of that information. Even so, the facts remain unclear whether that proprietary technical information was disclosed to Lewis while employed with GPSI or whether Lewis utilized any other proprietary technical information, such as the RAPID platform or ProStar GPS System during his one-month employment with GPSI.[9]

GPSI's customer and pricing lists and business plans similarly do not constitute trade secrets or legitimate business interests. The mere identity of clients and pricing terms related to GPSI's projects may not be sufficient to justify a restrictive covenant. *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1234 n. 11 (11th Cir. 2009) (indicating the consideration of the mere identity of a plaintiff's clients and the pricing terms as "valuable confidential business information" may not be sufficient to justify a restrictive covenant). This is especially true where, as here, GPSI has not shown its customer and pricing lists or business plans derive economic value from not being

---

[9] Compare the affidavits of Lewis (doc. 17) and Porter (doc. 28) for differing statements regarding the use of software platforms.

readily ascertainable by others who can obtain economic value from their disclosure or use or that they are the subject of reasonable efforts to maintain their secrecy.

Even more problematic is GPSI's attempt to preclude Lewis from using contacts and expertise obtained during his work at *Prolink* rather than any information or expertise obtained during his one-month tenure at GPSI. Based on the record before the Court, it appears that most if not all of Lewis's knowledge and expertise derives from his experience at Prolink prior to GPSI. GPSI has not shown that Lewis obtained any valuable confidential business or professional information nor any extraordinary or specialized training during his time at GPSI. Though GPSI may have hired him for the information and expertise he obtained while employed by Prolink, GPSI should not be allowed to prohibit Lewis from using that information and expertise.[10] In fact, an employer cannot preclude a former employee from using contacts and expertise gained during the former employment. *American Red Cross*, 143 F.3d at 1410. GPSI seeks to do exactly that and more by prohibiting Lewis from using contacts and expertise obtained during his employment with Prolink. Thus, GPSI has failed to meet its burden for showing a legitimate business interest warranting protection.

Notwithstanding GPSI's failure to meet its burden for showing a legitimate business interest, the restrictive covenants extend well beyond any reasonable geographic limitation on competition. As to the geographic scope, the Agreement restricts Lewis from competing with GPSI globally.[11]

---

[10] The Agreement explicitly states that Lewis has not brought with him to GPSI, nor would he use in the performance of his responsibilities at GPSI, "any document or materials of a former Company which are not generally available to the public or for which he does not have written permission from his former Company to take and use" (doc. 2, Exh. A, ¶ 5).

[11] The Non-Competition provision states"[g]iven the global nature of Company's business, there is no geographic limitation [to] the non-competition provision, and such provision

At the hearing on this matter, counsel for GPSI reiterated that the restrictive covenants operated world-wide due to the "global nature" of GPSI's business. Although provided an opportunity to do so, GPSI did not indicate a geographic restriction that would be reasonable. Rather, GPSI made it clear that anything less than global protection against competition from Lewis would not suffice. This requirement is patently unreasonable.

At the hearing, GPSI argued *AutoNation, Inc. v. O'Brien*, 347 F.Supp.2d 1299 (S.D. Fla. 2004), supports its proposition that a global non-compete provision is reasonable. In *AutoNation*, the Southern District of Florida found reasonable a request by the plaintiff that the defendant be prohibited from working in any geographic space in which the plaintiff operated. *Id.* at 1307. There, the agreement prohibited the defendant from competing "anywhere" in the United States. *Id.* at n. 9. Upon the request of the plaintiff, however, the court *limited* the geographic scope of the restraints to areas where the plaintiff had actual operations rather than prohibiting the defendant from competing nationwide. *Id.* at 1307. Accordingly, in *AutoNation*, the court did not grant an expansive, globe-encompassing prohibition on competition as GPSI would have this Court do.

Presumably, GPSI cites to the *AutoNation* opinion to bolster its argument that because GPSI competes globally in the golf cart mounted GPS systems industry the restrictive covenants found in the agreement should apply globally. I find this argument unavailing, especially in light of the fact that GPSI has cited no binding authority upholding a global restrictive covenant. Further, GPSI

---

shall be presumed effective world-wide" (doc. 2, Exh. A, ¶ 7). The non-solicitation and non-disclosure provisions do not explicitly state a geographic scope as to their application. *See id.* at ¶¶ 2, 8. Given GPSI's repeated affirmation of its status as a global entity, however, the preclusion of disclosure to any person or entity and the preclusion of solicitation of any employee, contractor, subcontractor, agent or existing or potential customers would potentially span across the globe as well.

offers no reasonable alternative to the geographic scope of the restrictive covenants, and, on this limited record, the Court cannot modify the geographic restriction to make it reasonable. Accordingly, I find the restrictive covenants overbroad and not reasonably necessary to protect any legitimate business interests.

Even if GPSI could establish a legitimate business interest or provide a reasonable geographic limitation, GPSI has not established a likelihood of success on the merits regarding whether Lewis in fact breached his Agreement by violating any of the restrictive covenants. "For a breach of contract claim, Florida law requires a plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."[12] *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). To establish the existence of a contract, a plaintiff must plead offer, acceptance, consideration and sufficient specification of essential terms. *Id.* Lewis contends an enforceable contract never existed between the parties because GPSI and Lewis never agreed to any essential terms and, even if a contract existed, it is void as Lewis signed it under duress and due to coercion (doc. 11). In short, enough issues of fact remain to warrant against the use of injunctive relief. Indeed, the Eleventh Circuit has cautioned courts to exercise great care before the entire case has been fully and fairly heard to assure that the power of the court to require or deter action does not result in unwarranted harm to the defendant or the public. *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005).

Regardless, GPSI has not shown Lewis materially breached the restrictive covenants. GPSI

---

[12] The Agreement dictates Florida law will apply. *See* doc. 2, Exh. A, ¶ 17. Lewis contends a contract does not exist and has filed a motion to transfer venue to the United States District Court for the District of Arizona (doc. 22), which GPSI opposes (doc. 25). The issue of proper venue is not currently before the undersigned and this Report and Recommendation makes no recommendation or determination as to the merits of that request.

has failed to show Lewis disclosed any trade secret information, failed to show Lewis is currently competing or has competed with GPSI since his employment ended with GPSI, and failed to show Lewis has solicited any former employees, contractors, subcontractors, agents or existing or potential customers from GPSI. Moreover, GPSI has failed to show how it has been damaged by any of the alleged actions of Lewis. Accordingly, GPSI has failed to show it has a substantial likelihood of success on the merits of its claim.

### 2. *Irreparable harm*

Even if GPSI could establish a substantial likelihood of success on the merits, the absence a substantial likelihood of irreparable harm to GPSI, standing alone, precludes entry of a preliminary injunction. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."). Florida law provides that "[t]he violation of an *enforceable* restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j) (emphasis added). As detailed above, GPSI has not shown a substantial likelihood of success as to whether its restrictive covenants are enforceable or as to Lewis's violations of those restrictive covenants. Therefore, no presumption of irreparable injury exists on this record.

Irrespective, GPSI has failed to show irreparable harm will result from Lewis's alleged conduct. In the context of a preliminary injunction, the asserted irreparable harm must be actual and imminent rather than remote or speculative. *Siegel*, 234 F.3d at 1176. GPSI has not shown it suffers or has suffered any actual or imminent harm due to Lewis's alleged conduct. GPSI argues Lewis *might* have contacted two clients and it has identified one former client who stopped doing business

14

with it although GPSI fails to show how any actions taken by Lewis contributed to the client's decision to take its business elsewhere. Further, GPSI repeatedly reiterated its status as a global enterprise. As a global company with a substantial portion of the market share, GPSI's claim of irreparable harm due to the potential loss of clients, which may have nothing to do with any actions taken by Lewis, are remote and speculative at best.

Additionally, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987). In its complaint, GPSI alleges it has no adequate remedy at law and is therefore entitled to an injunction enjoining Lewis from committing any further unlawful acts (doc. 2, ¶ 33); yet, it also seeks an award of compensatory and punitive damages for all harm suffered (doc. 2, p. 6). Based on GPSI's own request for relief, then, it appears that any harm suffered by GPSI for the alleged breach of the Agreement can be quantified into an award of damages. In fact, as noted above, GPSI identified only two existing clients which Lewis *may* have contacted and only one former client which may have left for reasons unrelated to actions of Lewis. Nothing in the record indicates GPSI actually lost those clients or any other clients, lost any employees, had any confidential or trade secret information disclosed or suffered a competitive disadvantage as a result of any actions taken by Lewis. Thus, GPSI has not shown it will suffer irreparable harm if the injunction does not issue.

### 3. Balance of harm

GPSI must also establish that the threatened harm to it outweighs the harm a preliminary injunction may cause to Lewis. *MacGinnitie*, 420 F.3d at 1240. In this instance, the balance of harm tips in favor of Lewis. GPSI's desire to enforce restrictive covenants against Lewis, where it has not demonstrated that those restrictive covenants are valid or reasonable, does not outweigh the

harm to Lewis of enforcing those unreasonable restrictions. The enforcement of the restrictive covenants would not threaten any legitimate business interest for GPSI because GPSI has not shown that any exist. But, enforcement of the restrictive covenants would prevent Lewis from competing in the golf cart mounted GPS industry worldwide. Moreover, the threat of GPSI's loss of a near monopoly in the industry and its potential inability to eradicate any and all competition in the industry pales in comparison to the effects of a global restriction on competition from Lewis or any other former GPSI employee. As such, GPSI has failed to show the threatened harm to it outweighs the harm a preliminary injunction may cause to Lewis.

### 4. *Public interest*

GPSI asserts entry of a preliminary injunction would serve the public interest by enforcing valid contractual provisions freely entered into by the parties, by protecting confidential and proprietary information of businesses, and by enforcing non-compete covenants permissible under Florida law. For the reasons set forth above, however, all of GPSI's arguments fail. Where an otherwise *enforceable* restrictive covenant exists, Florida law requires a court refusing enforcement of such provision on the basis that it violates public policy to specifically articulate the public policy violated. Fla. Stat. § 542.335(1)(i) (emphasis added). Further, Florida law requires the court to find the public policy requirements it articulates substantially outweigh the need to protect the *legitimate business interests* established by the person seeking enforcement. *Id*. In a case such as this, where GPSI has failed to show a likelihood of establishing the restrictive covenant provisions contained in the Agreement are valid and enforceable to protect any legitimate business interests or that, if they are, Lewis in fact breached those provisions, the refusal of this Court to enforce the restrictive covenants does not disserve the public interest. On the contrary, the refusal serves the public interest

16

by disallowing unreasonable restrictive covenants to unfairly restrain trade. Accordingly, the public interest considerations weigh against entry of a preliminary injunction.

   D. *Conclusion*

A preliminary injunction is an extraordinary remedy to be used only when a party carries its burden as to the four prerequisites. *Four Seasons,* 320 F.3d at 1210. GPSI has failed to carry that burden. Accordingly, it is hereby

RECOMMENDED:

1. GPSI's motion for preliminary injunction (doc. 3) be DENIED.

IT IS SO REPORTED at Tampa, Florida on February 8, 2010.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc:   The Honorable Elizabeth A. Kovachevich
      Counsel of Record